IN THE CIRCUIT COURT FOR MACON COUNTY, TENNESSEE
AT LAFAYETTE

FILED
MACON COUNTY
2022 JUL -7 AM 10: 32
CIRCUIT COURT CLERK

| | |
|---|---|
| AMY HUTCHINS AND CRYSTAL HUTCHINS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.:2022-CV-40 ) |
| SHAWN HUFF, MICHAEL W. HUFF, CITY OF LAFAYETTE, TRI COUNTY ELECTRIC MEMBERSHIP CORPORATION and TENNESSEE VALLEY AUTHORITY | ) ) ) ) ) ) ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

Come now the Plaintiffs, by and through counsel, and would respectfully submit to the Court the following Complaint:

1. The Plaintiff, Amy Hutchins, is a resident of the State of Tennessee, residing at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

2. The Plaintiff, Crystal Hutchins, is a resident of the State of Tennessee, residing at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

3. The Defendants, Shawn Huff and Michael W. Huff, reside at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

4. The Defendant, City of Lafayette, is a municipality that can be served through the city attorney, James D. White Jr., at Lafayette City Hall, located at 200 E. Locust Street, Lafayette, TN 37083.

5. The Defendant, Tri County Electric Membership Corporation, is a domestic non-profit corporation doing business in the State of Tennessee with its principal address

1

located at 405 College Street, Lafayette, TN 37083-1729 and its registered agent, Tony Bentle, located at the same address.

6. The Defendant, Tennessee Valley Authority, is a federally owned electric utility corporation doing business in the state of Tennessee. Its principal address and headquarters are located at 400 W. Summit Hill Dr. SW, Knoxville, TN 37902, and it can be served pursuant to Fed. R. Civ. P. 4(i)(2) through the following:

    a. By sending a copy of the Complaint and Summons by registered or certified mail to the Tennessee Valley Authority, in care of Executive Vice President and General Counsel, David. B. Fountain at the address 400 W. Summit Hill Dr. SW, Knoxville, TN 37902.

    b. By delivering a copy of the Complaint and Summons to the United States Attorney of the Middle District of Tennessee, Mark H. Wildasin, or by sending a copy of each by registered or certified mail to the civil-process clerk at the United States Attorney's office, located at 719 Church Street, Suite 3200, Nashville, TN 37203.

    c. By sending a copy of the Complaint and Summons by registered or certified mail to the Attorney General of the United States at Washington, D.C., Karl A. Racine, whose office is located at 400 6th St. NW, Washington, D.C. 20001.

7. This Complaint concerns an automobile collision occurring at or near the intersection of Old Highway 52 and Highway 52 in Lafayette, Tennessee in Macon County.

8. The amount in controversy is a fair, just, and equitable amount to be decided by the trier of fact after hearing all of the evidence at trial. Pursuant to Tenn. R. Civ. P.

2

8.01 and 15.02, the amount awarded by the trier of fact shall not exceed $2,500,000.00 for compensatory damages and punitive damages to the Plaintiff Amy Hutchins and $1,000,000.00 for compensatory damages and punitive damages to the Plaintiff Crystal Hutchins.

## ALLEGATIONS AGAINST THE HUFF DEFENDANTS

9. On or about October 31, 2021, the Defendant Shawn Huff was traveling in Macon County, Tennessee and operated a motor vehicle in a negligent or reckless manner so as to cause his vehicle and the vehicle the Plaintiffs were riding in to collide, which resulted in personal injuries to the Plaintiffs.

10. Since this collision, the Plaintiffs have received examination, evaluation, treatment, and therapy for injuries caused by the Defendants.

11. Such injuries have greatly hindered the enjoyment of life of the Plaintiffs.

12. The Defendant Shawn Huff had a duty to keep a proper lookout ahead, to drive at a reasonable and safe speed, to see all that came into the Defendant's line of sight, and to drive reasonably and carefully.

13. At all times herein material, the Defendant Shawn Huff was operating a vehicle at a speed too great for the circumstances then and there existing, which was the direct and proximate cause of the damages and injuries sustained by the Plaintiffs.

14. At all times herein material, the Defendant Shawn Huff failed to maintain a proper lookout ahead, which was the direct and proximate cause of the damages and injuries sustained by the Plaintiffs.

3

15. At all times herein material, the Defendant Shawn Huff carelessly operated a vehicle in a manner which caused his vehicle and the vehicle the Plaintiffs were riding in to collide, which was the direct and proximate cause of the damages and injuries sustained by the Plaintiffs.

16. At all times herein material, the Defendant Shawn Huff failed to take evasive action by applying the brakes or otherwise steering the vehicle in order to avoid a collision once that collision was imminent, which was the direct and proximate cause of the damages and injuries sustained by the Plaintiffs.

17. At all times herein material, the Defendant Shawn Huff was guilty of the aforementioned acts of common law negligence, which acts or omissions were the direct and proximate cause of the damages and injuries sustained by the Plaintiffs

18. In addition to the aforementioned acts of negligence, the Defendant Shawn Huff was negligent per se in that the Defendant drove a vehicle with such a willful, reckless, and wanton disregard to the safety of the Plaintiffs so as to constitute reckless driving in violation of Tenn. Code Ann. § 55-10-205.

19. Furthermore, the Defendant Shawn Huff was negligent per se in violating Tenn. Code Ann. § 55-8-128 et. seq., Failure to yield right-of-way at intersection.

20. Furthermore, the Defendant Shawn Huff was negligent per se in violating Tenn. Code Ann. § 55-8-136 et. seq., Failure to use Due Care.

21. At the time of the collision, which is the subject of this Complaint, Defendant Shawn Huff was driving a vehicle owned by Defendant Michael W. Huff, and Defendant Michael W. Huff had given Defendant Shawn Huff permission to drive the vehicle.

4

22. Upon information and belief, Defendant Michael W. Huff was negligent in that Defendant Michael W. Huff knew or should have known that the decision to allow Defendant Shawn Huff to operate Defendant Michael W. Huff's vehicle created a foreseeable danger to third parties.

23. Said negligence was a substantial and proximate cause of the injuries and damages suffered by the Plaintiffs.

24. At the time of this collision, Defendant Shawn Huff was operating Defendant Michael W. Huff's vehicle with his permission, and as such, the negligence of Defendant Shawn Huff is imputed to Defendant Michael W. Huff pursuant to the doctrines of vicarious liability, negligent entrustment, the family purpose doctrine, and/or the principles of agency. Defendant Michael W. Huff is further responsible pursuant to Tenn. Code Ann. §§ 55-10-311 (prima facie evidence of ownership of automobile and use in owner's business) and 55-10-312 (registration prima facie evidence of ownership and that operation was for owner's benefit).

## ALLEGATIONS AGAINST THE CITY OF LAFAYETTE

25. Plaintiff realleges and incorporates by reference paragraphs 1-24, inclusive, as though fully set forth herein.

26. The City of Lafayette and its employees acting within the course and scope of their employment for the City of Lafayette maintained the roads and traffic light at the intersection of Old Highway 52 and Highway 52 as of October 31, 2021.

27. The traffic light at the intersection of Old Highway 52 and Highway 52 was not operational at the time of the crash due to a scheduled power outage decisions made by

the City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette.

28. Typically, when there is a scheduled power outage, traffic lights will flash yellow despite the outage because they are powered by a generator as a failsafe or backup.

29. The scheduled power outage was mentioned by Tri County Electric Company on their Facebook page, however, the City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette failed to adequately provide notice to and protect motorists traveling upon the roadway regarding traffic light outages on or about October 31, 2021.

30. Tri County Electric's Facebook post regarding the scheduled outage for the night of October 30, 2021, and the early morning of October 31, 2021, did not mention that the traffic lights at the intersection of Old Highway 52 and Highway 52 would not be operational and the City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette failed to adequately provide such notice.

31. Tri County Electric's Facebook post regarding the scheduled outage for the night of October 30, 2021, and the early morning of October 31, 2021, did not mention that the backup generators that typically power the warning lights when the electricity goes out would not be operational and the City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette failed to adequately provide such notice.

32. The Plaintiffs did not follow Tri County Electric on Facebook prior to October 30th and 31st of 2021 and did not see the post regarding this scheduled outage.

6

33. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette had advance notice of the power outage scheduled for October 30th and 31st of 2021.

34. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette failed to notify Plaintiffs that the traffic lights at the intersection of Old Highway 52 and Highway 52 were not operational on October 30, 2021, and on the early morning of October 31, 2021.

35. Defendant The City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette owed a duty of due care to the Plaintiffs.

36. Defendant The City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette owed a duty to the Plaintiffs to ensure that the intersection of Old Highway 52 and Highway 52 was free of defective, unsafe, or dangerous conditions.

37. Defendant The City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette owed a duty to the Plaintiffs to ensure that the traffic lights at the intersection of Old Highway 52 and Highway 52 were operational at the time of the crash complained of in paragraphs 9-24, herein, or to make the intersection of Old Highway 52 and Highway 52 safe in other ways as so to ensure the safety of the Plaintiffs.

38. Defendant The City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette breached its duty owed to the Plaintiffs.

7

39. Normally when the electricity goes out, the traffic light at the intersection of Old Highway 52 and Highway 52 has flashing lights, but no flashing lights at the intersection of Old Highway 52 and Highway 52 were present at the time of the crash complained of in paragraphs 9-16, herein, and such a decision to fail to provide flashing lights was made by the City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette.

40. Normally when the electricity goes out, the traffic light at the intersection of Old Highway 52 and Highway 52 has flashing lights, which is powered by a generator. However, no such flashing lights were provided at this intersection and such decision to not provide these flashing lights was made by the City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette.

41. The backup generator that normally powers this traffic light in the event of a power outage was not operational on October 31, 2021, at the time of this crash. However, no such operational backup generator was provided at the intersection of Old Highway 52 and Highway 52 and the decision to not provide such was made by the City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette.

42. There were no flashing lights to indicate the traffic light was not fully operational on October 30-31, 2021, and the decision to not provide such was made by the City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette.

43. There were no signs to indicate the traffic light was not operational on October 30-31, 2021, and the decision to not provide such was made by the City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette.

44. There was no indication to the Plaintiffs that they were approaching a traffic light on the early morning of October 31, 2021, due to the failure of the Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for the City of Lafayette.

45. There were no police officers present to warn or indicate the traffic light was not operational on October 30-31, 2021. This decision, the failure to provide or place officers, was made by the City of Lafayette and its employees who were acting within the course and scope of their employment for the Defendant City of Lafayette and was negligent and breached their duty owed to the Plaintiffs.

46. There were no city or county personnel present to indicate the traffic light was not operational on October 30-31, 2021. This decision, failing to provide personnel, was made by the City of Lafayette and its employees who were acting within the course and scope of their employment for the Defendant City of Lafayette and was negligent and breached their duty owed to the Plaintiffs.

47. Neither Plaintiff lived in the city of Lafayette at the time of this crash.

48. Neither Plaintiff was aware of the scheduled power outage at the time of this crash.

49. The collision occurred at 1:04 am in the morning on October 31, 2021, and it was pitch black outside at the time of the crash.

9

50. Plaintiff Amy Hutchins did not see any traffic lights or streetlights at the intersection.

51. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette knew or should have known the roads would be traveled more frequently on October 30th and 31st of 2021 than most other fall weekends without a scheduled holiday or event.

52. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette were negligent in allowing a power outage to occur in the late night/early morning of Halloween weekend in 2021.

53. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette were negligent in permitting the scheduled power outage to proceed and not providing a generator or other means to power warning lights or providing signage at the intersection of Old Highway 52 and Highway 52 at the time of the crash complained of in paragraphs 9-16, herein.

54. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette were negligent in that they did not provide proper warning that the traffic lights were not operational, whether by signs, flashing lights, police presence or other means to your Plaintiffs who were traveling at the intersection of Old Highway 52 and Highway 52 at the time of the crash complained of in paragraphs 9-24, herein.

55. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette were, also, negligent

in that no generator, battery, police presence or other backup plan was in place to provide either a warning that the traffic light at the intersection was not operational or to provide sufficient power for the light to remain operational at the intersection of Old Highway 52 and Highway 52 at the time of the crash complained of in paragraphs 9-16, herein.

56. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette were negligent in failing to test the backup power source so that the traffic light at the intersection of Old Highway 52 and Highway 52 would have flashing lights during the scheduled power outage.

57. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette were also negligent in that they failed to patrol or inspect the area timely to determine that the backup flashing lights were not working for the traffic light at the intersection of Old Highway 52 and Highway 52.

58. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette were, also, negligent because no police officers were stationed at the intersection of Old Highway 52 and Highway 52 to warn or otherwise notify motorists and the Plaintiffs of the traffic light outage.

59. Instead of rescheduling the power outage and/or providing a generator or other battery power, police presence, or some other type of safety mechanism so that there would be some type of warning at the traffic light at the intersection of Old Highway 52 and Highway 52, Defendant City of Lafayette and its employees who were acting within

11

the course and scope of their employment for Defendant City of Lafayette allowed the scheduled outage to occur without any safeguard to protect the Plaintiffs.

60. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette failed to detour Plaintiffs around the intersection of Old Highway 52 and Highway 52 despite having knowledge that the traffic lights were inoperable at the time of the crash complained of in paragraphs 9-16, herein.

61. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette failed to implement a rotating outage system, powering down only a few blocks at a time to ensure personnel or police presence at all major intersections, including the intersection of Old Highway 52 and Highway 52 which is the location of the crash complained of in this matter.

62. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette failed to cancel, delay, or reschedule the power outage after realizing there was insufficient police and/or personnel presence to place an official or officer at the intersection of Old Highway 52 and Highway 52.

63. Defendant City of Lafayette's decision(s) and/or action(s) and/or inaction(s) and the decision(s) and/or action(s) and/or inaction(s) of its employees who were acting within the course and scope of their employment for Defendant City of Lafayette as alleged in paragraphs 24-60 and paragraphs 63-64 and paragraph 74 are non-discretionary decisions made by Defendant City of Lafayette and its employees who were acting within the course and scope of their employment.

64. Defendant, City of Lafayette, is liable to Plaintiffs pursuant to Tenn. Code. Ann. §29-20-203, et. seq.

65. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette had actual and/or constructive knowledge that the traffic lights at the intersection of Old Highway 52 and Highway 52 would be inoperable at the time of the crash complained of in paragraphs 9-16, herein, thereby creating a defective, unsafe, or dangerous condition on the roadway at the intersection of Old Highway 52 and Highway 52 which is the direct and proximate cause of your Plaintiffs' injuries.

66. Defendant City of Lafayette and its employees who were acting within the course and scope of their employment for Defendant City of Lafayette created and/or allowed an unsafe, or dangerous condition to exist at the intersection of Old Highway 52 and Highway 52 which was the direct and proximate cause of the Plaintiffs injuries and damages.

## ALLEGATIONS AGAINST TRI COUNTY ELECTRIC MEMBERSHIP CORPORATION

67. Plaintiff realleges and incorporates by reference paragraphs 1-66, inclusive, as though fully set forth herein.

68. Defendant, Tri County Electric Membership Corporation, should have had an agreement in place with the Defendant City of Lafayette and its employees who were acting within the scope of their employment to provide for the safety of the Plaintiffs and other motorists in the event that a power outage was to occur, scheduled or otherwise.

13

69. Defendant, Tri County Electric Membership Corporation, posted notice of the outage via its Facebook page.

70. Defendant, Tri County Electric Membership Corporation, knew or should have known that the Facebook post was insufficient notice to many persons travelling on Highway 52 including the Plaintiffs.

71. Defendant, Tri County Electric Membership Corporation, had a duty to Plaintiffs to provide services in a safe manner and avoid foreseeable risks.

72. Defendant, Tri County Electric Membership Corporation, scheduled a power outage for October 30th -31st, 2021.

73. Defendant, Tri County Electric Membership Corporation, was negligent in deciding to schedule a widespread power outage on Halloween weekend without ensuring for the safety of travelers who would be relying on traffic lights for their safety.

74. It is common knowledge that Halloween is a holiday or event many people recognize and celebrate.

75. Halloween weekend frequently prompts gatherings and/or social events and/or outings during the days including and preceding October 31, 2021.

76. Defendant, Tri County Electric Membership Corporation, knew or should have known the roads would be traveled more frequently on October 30th and 31st of 2021 than most other weekends without a scheduled holiday or event.

77. Defendant Tri County Electric Membership Corporation and Defendant City of Lafayette along with its employees who were acting within the course and scope of their employment should have provided for and/or should have ensured Defendant City of Lafayette would provide a backup generator, flashing lights, police presence and/or any

14

other means to alert/notify travelers, including the Plaintiffs, that the traffic lights at Old Highway 52 and Highway 52 were inoperable at the time of the crash.

78. Defendant, Tri County Electric Membership Corporation, breached its duty to Plaintiffs.

79. Defendant Tri County Electric Membership Corporation's breach of its duty is the direct and proximate cause of the crash complained of in paragraphs 9-16, herein.

80. As a result of Defendant's, Tri County Electric Membership Corporation, actions and inactions which are the direct and proximate cause of this crash, Plaintiffs have been damaged.

## ALLEGATIONS AGAINST TENNESSEE VALLEY AUTHORITY

81. In their Answer, Defendant Tri-County Electric Membership Corporation raises the affirmative defense of comparative fault against the Tennessee Valley Authority (TVA). Specifically, Defendant Tri County alleges, in pertinent part, as follows:

> "Tri County affirmatively asserts, if proven applicable through investigation and discovery, under the doctrine of comparative fault, that... the power outage was scheduled by the Tennessee Valley Authority (TVA) who provides electricity to the area where the accident took place. To the extent these parties are responsible and their conduct is the proximate cause of any injuries or damages, Tri County asserts that the... TVA should be assessed the percentage of fault for which they are responsible."

*Defendant Tri County Electric Membership Corp. Answer to Amended Complaint ¶ 60*

*(May 16, 2022).*

82. The Plaintiffs respectfully submit that to the extent Defendant Tri County proves this affirmative defense, Defendant TVA's negligence is a proximate cause of the Plaintiff's injuries and damages, and Defendant TVA should be held liable for all general and specific damages identified in this Second Amended Complaint.

83. As a result of the injuries suffered and damages incurred by the Plaintiffs, the Defendants are liable to the Plaintiffs for the aforementioned losses.

84. The Plaintiffs allege that as a direct and proximate result of one or more acts of negligence, recklessness, or wanton disregard by the Defendant TVA, the Plaintiffs suffered and continue to suffer injuries and damages as follows: property damage, past pain and suffering, future pain and suffering, past medical expenses, future medical expenses, loss of income and future earning capacity, permanent impairment, disfigurement, and loss of enjoyment of certain employment, social and recreational activities, pain and suffering, inconvenience humiliation, fear, anxiety, loss of enjoyment of life, and emotional distress.

## APPLICABLE TO ALL COUNTS

85. Plaintiffs reallege and incorporates by reference paragraphs 1-84, inclusive, as though fully set forth herein.

86. The Plaintiffs allege that as a direct and proximate result of one or more acts of negligence on the part of the Defendants, including when applicable their employees or agents who were acting within the course and scope of their employment, the Plaintiffs suffered and continue to suffer injuries and damages as follows: property damage, past pain and suffering, future pain and suffering, past medical expenses, future

medical expenses, loss of income and future earning capacity, permanent impairment, disfigurement, and loss of enjoyment of certain employment, social and recreational activities, pain and suffering, inconvenience humiliation, fear, anxiety, loss of enjoyment of life, and emotional distress.

**PREMISES CONSIDERED, THE PLAINTIFFS PRAY:**

1. That process issue and the Defendants be required to respond under the Tennessee Rules of Procedure.

2. That the Plaintiffs be awarded a sum to be proven at the time of trial for damages caused by the Defendants, but not to exceed $2,500,000.00 for Plaintiff Amy Hutchins and $1,000,000.00 for Plaintiff Crystal Hutchins.

3. That the cost of this action be taxed to the Defendants.

4. For such other, further and general relief which may be deemed by this Honorable Court to be appropriate.

Respectfully submitted,

NINA PARSLEY, BPR #023818
MICHAEL K. PARSLEY, BPR# 023817
Michael D. Ponce & Associates, PLLC
Attorneys for Plaintiff
400 Professional Park Drive
Goodlettsville, TN 37072
Telephone: (615) 749-6127

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent by email and U.S. Mail, postage prepaid, on this 7th day of July, 2022 to:

Sarah M. Mathews
Farrar & Bates, LLP
12 Cadillac Drive, Suite 480
Brentwood, TN 37027
Sarah.mathews@farrar-bates.com

Rhett Chandler
Law Offices of Julie Bhattacharya Peak
P.O. Box 7217
London, KY 40742
Rhett.Chandler@libertymutual.com

Joseph Johnsen
Morgan & Morgan

Lynn Peterson
Lewis Thomason, P.C.
P.O. Box 2425
Knoxville, TN 37901
Lpeterson@lewisthomason.com

Gary N. Bobo
Law Office of Nancy W. Phillips
424 Church Street, Suite 2150
Nashville, TN 37219
Gary.Bobo@allstate.com

David Ayliffe
Director, Litigation

18

810 Broadway, Suite 105  
Nashville, TN 37203  
jcjohnsen@forthepeople.com

TVA Office of the General Counsel  
400 West Summit Hill Drive  
Knoxville, Tennessee 37902  
ddayliffe@tva.gov

*signature*

MICHAEL K. PARSLEY/NINA PARSLEY